## GENTRY et al. v. CITY OF FORT LAUDERDALE.

### No. 9923.

Circuit Court of Appeals, Fifth Circuit.

Jan. 27, 1942.

Miller Walton, of Miami, Fla., Olin E. Watts, of Jacksonville, Fla., and J. Franklin Garner, of Lakeland, Fla., for appellants.

Julian E. Ross, of Ft. Lauderdale, Fla., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal is from an order entered in the City of Fort Lauderdale, municipal composition proceeding, denying a petition filed by holders of refunding bonds of 1936 to compel the city to increase its tax levies for the years 1939-40, 1940-41. The complaint of the petition was that the levies the city had made for those years were short of those required by the plan of composition on the faith of which complainants had accepted the bonds. The defense as to the levy for 1939-40, was that prior thereto, the city had purchased and retired $67,000 of refunding bonds and under

the retirement provision of Section 6,[1] of the plan of composition, it was entitled to reduce by that amount, the levy required by that section for that year. The defense as to 1940–41 was the same as to the $67,000 of purchased bonds, and in addition that it was entitled to reduce the required levy by the amount of excess or surplus cash in the sinking fund and an amount estimated as collections to be made on delinquent tax levies in that year

The district judge, agreeing with petitioners that the plan required that the levies be made as set out in it, agreed with the city that under the enforcement provision of Section 6, the levies in each of the tax years were subject to be reduced by $67,000 on account of the purchased bonds, but holding that except as provided in Section 6, the levies were not subject to reduction, he rejected the city's claim to a further reduction of the amount of excess or surplus cash in the sinking fund, and the estimated collections from delinquent levies. Finding that for 1939–40, $123,406.-70, had been levied instead of the $200,000 required, and that after allowing for the $67,000 of purchased bonds, there was a deficit of $9,923.28, and that for 1940–41, there was a levy of only $153,578.51 instead of $250,000, as provided in the plan, and that after again allowing credit for the $67,000 of purchased bonds, there was a

sinking fund deficit of $29,421.49 for that year with a total for the two years of $39,-014.75, he ordered this deficit made good. The city thereafter agreeing in lieu of an additional levy, to retire and retiring additional bonds in excess of that amount, the petitions for coercive levy were denied.

Petitioners are here insisting that, in so ruling, the district judge has completely misapprehended and misapplied the credit clause of the retirement provision of Section 6, and has in effect deprived them of valuable contract rights specifically accorded them thereunder. The city on its part insists that the allowance in each year of the $67,000 bond credit against the required levy is based on a correct construction and application of Section 6, but if it is not and the crediting clause of Section 6 applies only beginning with the years 1945–46, still appellants may not complain of the order. For it recognizes and affirms the obligation of the city to provide the sinking fund as required by the plan, and requires its discharge in each year by making either the full levy required or its equivalent, the full levy less bonds actually retired.

We agree with appellants that the retirement provision of Section 6 of the plan relates not at all to, has no connection with, the years in question in this suit, and that the order of the court giving them such application is erroneous. Section 6,[2] the

[1] "If, in any fiscal year, the Commission has maintained its schedule of retirements as in the above paragraphs provided, and has, during preceding fiscal years, retired refunding bonds in greater amounts than in such paragraphs provided for such preceding years, then it is understood and agreed that the Commission is to be given credit for such excess retirements, and that, in making its sinking fund levy for such fiscal year, the amounts hereinabove specified as the amounts to be produced for such fiscal year may be decreased as to such sinking fund by the amount which the bonds payable from such sinking fund so retired during preceding fiscal years exceeds the amount of bonds so scheduled to be retired during such preceding years, and such deductions may continue to be made from year to year until such time as the total amount of refunding bonds theretofore retired is no longer in excess of the amount of refunding bonds contemplated by the above schedules to be retired prior to such date, provided, however, that in no event shall the sinking fund levy for any fiscal year be less than

the amount required to pay all interest falling due on the outstanding refunding bonds payable from such sinking fund during the succeeding fiscal year."

[2] Briefly summarized, this section requires the city to establish a sinking fund "to be known as 'The Refunding Bonds of 1936 Sinking Fund' which shall be kept on deposit in a solvent bank, separate and apart from all other city funds, and shall be used solely for the payment of interest on and principal of the refunding bonds in the manner herein provided". * * * Reciting, "It is agreed that there shall be levied in each of the following years a sinking fund, sufficient, if all of said taxes are collected, to produce the following amounts", it sets out the levy required for each year from 1935–36 to 1974–75. For 1939–40 the required levy is $200,000, for 1940–41 and for each year thereafter until 1945–46, when the retirement provisions become applicable, it is $250,000. For 1945–46 and for each year thereafter until 1974–75, the requirement is a varying principal amount running as low as $172,000 in some years and as high as $538,000

sinking fund section of the plan, is clearly and simply written, without uncertainty or ambiguity and its meaning and effect are plain.

 It is appellants' contention, and with this the district judge agreed, that the requirements of Section 6 for sinking fund levies are essential requirements of the plan and the fact, which the city seeks to make much of, that when the plan was entered into the collections were low and since have greatly increased, and if the levies provided for are made as provided, more money will be raised than in the beginning was thought possible, is without legal significance. It is their further contention with which the district judge agreed, that except as affected by the retirement provisions of Section 6, the levies the section provides for must be made as provided in it. Appellants insisted below that this clause had no application to the years in question or to any years prior to 1945–46, while the city insisted and the district judge agreed, that its provisions could and should be applied to the retirement of bonds in the earlier years and the order appealed from was entered in an attempted application of this provision.

We think it plain that this was error. It is clear that the words of the Retirement Clause, "if in any fiscal year the commission has maintained its schedule of retirements as in the above paragraphs", refer to the positive schedule the section sets up for the year 1945–46 and afterward. They cannot be applied negatively in the way the city contended for and the district judge gave them effect, to years prior thereto, by a holding that since there were no compulsory retirement provisions for the earlier years, all voluntary retirements made therein must be considered retirements in excess of requirements within the meaning of the section. What the parties intended to effect and what the clause in question effects is an agreement modifying the requirements for principal levies in the years in which principal retirements are compulsory by crediting against them bonds already retired by the city in excess of the amounts required to be retired. It has no application to, it cannot be invoked in support of, the action of the city in reducing the sinking fund levies in the prior years by the amount of bonds it has retired.

 It does not follow though that because wrongly based the order must be reversed. Appellants must show more than merely academic error. They must show injury to them as the result of it. Appellants realizing that this is so, point to the great reduction in the sinking fund, (6 times $67,000, $396,000) and therefore in the security of their bonds which will result if, under the rule established by the order,[3] the sinking fund levy required for each year prior to 1945–46, the first retirement year, is reduced by $67,000, the amount of the retired bonds. Urging upon us that these sinking fund levies are of the essence of this agreement and that the order, to the extent of the continuing credit in each year, does away with them, appellants insist that damage has been shown.

If there were in question only the credit in the year 1939–40, so that the $67,000 of bonds retired was credited only once, and if it appeared that the money used to retire these bonds had come not from the

in others, always plus interest requirements for the ensuing year. There is a general provision that money in the sinking fund is to be used first for the payment of interest as provided in the section and thereafter at all times when the money on hand in the sinking fund exceeds by $1,000, the ensuing six months interest, such surplus shall be used for the purchase of refunding bonds on the open market. If they cannot be purchased, the commission may call them for redemption, except that before the fiscal year 1945–46, there shall be no obligation, only a discretion, to call. There is a provision that the amounts set out as the required levies, are to be regarded as minimum requirements and the city may levy additional taxes for the retirement of the refunding bonds or may retire them from other sources than the

levies above provided. Reciting: "This plan anticipates that the refunding bonds herein authorized shall be retired by purchase or redemption in the following years." There follows a table of bond retirements, $100,000 in 1945–46, and varying amounts in the years following. Then follows the Retirement Provision set out in Note (1) about which the controversy here centers.

[3] The order recited: Questions raised involved the propriety of the sinking fund tax levies made by the city in its fiscal years 1939–40, 1940–41, for the sinking fund designated in the plan of composition as the "Refunding Bonds of 1936 Sinking Fund", but the deposition of those questions will necessarily control the sinking fund tax levies to be made in future years.

sinking fund but from other sources as was permissible under the plan, it would be difficult to see how appellants sustained damage by the action of the court in allowing the city to reduce the sinking fund levy in that year by the amount of bonds retired from sources other than the sinking fund, and in each succeeding year by the amount of additional bonds so retired, and if this were the effect of the order we should not disturb it. For the city's credit and therefore the position of plaintiffs as its bondholders would be just as much strengthened by the retirement of bonds in that way as by the levy of taxes to retire them. But the evidence not only does not establish that these retirements were made from sources outside the sinking fund, but as far as it goes, it points to the sinking fund as the source. And in addition by allowing the same $67,000 to be again credited on the 1940–41 levy the court has permitted the retirement of $67,000 of bonds to take the place of the levy of a sinking fund of twice that much. The positive requirement for sinking fund levies, which are of the essence of the composition agreement, may not be avoided in this way. The order is reversed and the cause is remanded for further and not inconsistent proceedings.

Reversed and remanded.